UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
**KEVIN McCABE,** *Individually and on Behalf of All Others Similarly Situated***,**

                              Plaintiff,

        – against –

**NATIONAL PRESTO INDUSTRIES, INC.,**
------------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

24-CV-6552 (AMD) (RML)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brought this action on behalf of himself and other class members, asserting claims under the New York consumer protection statute, N.Y. Gen. Bus. L. § 349, and false advertising statute, N.Y. Gen. Bus. L. § 350, as well as under consumer protection laws of Alabama, Alaska, the District of Columbia, Hawaii, Idaho, Massachusetts, New Hampshire, New Mexico, Oregon, Rhode Island, and Utah.  The defendant moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons that follow, the Court grants the motion as to the class claims brought under the Alabama Deceptive Trade Practices Act and denies the motion as to the remaining claims.

## BACKGROUND

### I. Factual Background

The defendant, National Presto Industries, Inc., distributes the Coffee Percolator on Amazon.  (ECF No. 1 ¶¶ 8, 11.)[1]  The title of the product listing was "Presto Stainless-Steel Electric Coffee Percolator, 12-Cups, Black."  (*Id.* ¶ 16.)  The plaintiff alleges that "[t]he term

---

[1] The plaintiff alleges that the defendant submitted the listing pursuant to a contract between Presto and Amazon.com Service, Inc., or a subsidiary thereof.  (ECF No. 1¶ 8.)

'12-Cups' in the [listing title] referred to the quantitative capacity of the Coffee Percolator." (*Id.* ¶ 17.)  The product listing contained hyperlinks to several documents: an "Installation Manual," "User Guide," "Instructions for Use," and "User Manual." (*Id.* ¶ 25.)  The user manual represented that the product "is designed and built to provide many years of satisfactory performance under normal household use." (*Id.* ¶ 14.)[2]  A disclaimer on the second page of the hyperlinked documents says that "[t]he numbers indicate the quantity of cups brewed. . . . One cup is approximately 5 ounces brewed coffee." (*Id.* ¶ 25.)

On July 12, 2024, the plaintiff bought a Coffee Percolator from Amazon for his "personal, household use," as did the other class members.  (*Id.* ¶¶ 12, 15.)[3]  The class members saw the listing title before they bought the product; the plaintiff alleges that "[b]ased upon the common understanding" that "cup" refers to "an eight-fluid-ounce cup" — a "standard cup" — the class members believed that the Coffee Percolator's capacity was twelve standard cups.  (*Id.* ¶¶ 16–18.)  In fact, the Coffee Percolator's capacity was about eight standard cups.  (*Id.* ¶ 23.)

According to the plaintiff, the defendant wanted the class members to believe that the Coffee Percolator cups were standard cups, and knew that the class members would factor that belief into their decisions about whether to buy the Coffee Percolator.  (*Id.* ¶¶ 19, 21.)  The plaintiff asserts that the defendant knew that the class members would be less likely to buy the Coffee Percolator if they knew that it only held eight standard cups.  (*Id.* ¶ 22.)  The plaintiff further claims that nothing in the listing suggested that the class members should read the disclaimer about the capacity before they bought the Coffee Percolator.  (*Id.* ¶ 27.)  The listing

---

[2] The "instructions for use" and "user manual" are identical. (*Id.* ¶ 25.)

[3] According to the plaintiff, class members would be the "thousands of persons who are similarly situated" to him.  (*Id.* ¶ 31.)  The plaintiff bought the Coffee Percolator using Amazon's desktop website.  (*Id.* ¶ 12.)  Many of the proposed class members purchased the Coffee Percolator on Amazon's website or using Amazon's smart phone application.  (*Id.* ¶ 13.)

2

advised customers to refer to the user guide or user manual "before first use," not before purchase. (*Id.*) Moreover, the plaintiff asserts, the class members did not see the disclaimer. (*Id.* ¶ 26.) The plaintiff alleges that the class members were "materially misled" by the term "12-Cups" in the listing title, and that if the title had accurately represented the Coffee Percolator capacity, the price would have been less, and the class members would have therefore paid the lower amount. (*Id.* ¶ 29.)

The plaintiff claims that the defendant violated the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1–8-19-15 (*id.* ¶¶ 38–40), the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471–45.50.561 (*id.* ¶¶ 41–43), the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901–3913 (*id.* ¶¶ 44–46), the Hawaii Unfair and Deceptive Acts or Trade Practices Act, Haw. Rev. Stat. §§ 480-1–480-24 (*id.* ¶¶ 47–49), the Idaho Consumer Protection Act, Idaho Code §§ 48-601–48-619 (*id.* ¶¶ 50–52), the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93a, §§ 1-11 (*id.* ¶¶ 53–55), the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1–358-A:13 (*id.* ¶¶ 56–58), the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1–57-12-26 (*id.* ¶¶ 59–61), the New York Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law (GBL) §§ 349–350-f-1 (*id.* ¶¶ 62–64), the Oregon Unlawful Trade Practices Act, Ore. Rev. Stat. §§ 646.605–646.700 (*id.* ¶¶ 65–67), the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1–6-13.1-30 (*id.* ¶¶ 68–70), and the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1–13-11-23 (*id.* ¶¶ 71–73). The plaintiff seeks statutory damages and reasonable legal fees available under the respective statutes.

**LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

3

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). To establish standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff herself is thus generally an essential component of Article III standing." *Id.* "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

**I.     Rule 12(b)(1)**

The defendant argues that the plaintiff has not satisfied the "causal connection" element of Article III standing because he does not allege that he relied on the "12-cup" product listing statement when he decided to buy the Coffee Percolator. (ECF No. 20 at 11–13.) The plaintiff

4

maintains that he did plead reliance, and that in any event, reliance is not required for a price-premium theory of injury.  (ECF No. 24 at 11–15.)  The defendant responds that the plaintiff conflates injury and causation.  The defendant cites *Kraus v. Snow Teeth Whitening LLC*, No. 20-CV-6085, 2022 WL 4642170 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted,* No. 20-CV-6085, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022) for the proposition that a purchase price premium injury does not separately satisfy the causation requirement in false advertising cases.  (ECF No. 25 at 7–9.)

"[C]ausation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation."  *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010).  A plaintiff claiming false advertising "under a price premium theory . . . must allege not only that [the defendant] charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product."  *Poyer v. Snow Teeth Whitening LLC*, No. 22-CV-1506, 2023 WL 3827623, at *6 (E.D.N.Y. May 5, 2023), *report and recommendation adopted*, No. 22-CV-1506, 2023 WL 5978192 (E.D.N.Y. Sept. 14, 2023) (quoting *Turk v. Rubbermaid Incorporated*, No. 21-CV-270, 2022 WL 836894 at *8 (S.D.N.Y. Mar. 21, 2022)).  As the defendant points out, the plaintiff must plead causation, separate and apart from any statutory requirements imposed by N.Y. GBL §§ 349 and 350, for the Court to have Article III standing.[4]  *See Kraus*, 2022 WL 4642170, at *5 ("In false advertising cases, the only way a plaintiff can show that he was injured as a result of the

---

[4] Causation is also an element of a claim under N.Y. GBL §§ 349 and 350.  *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("In addition to alleging the labels or advertising are materially misleading, Plaintiff also must properly allege actual injury caused by Defendant's statements.").  The defendant does not dispute that the plaintiff has alleged causation under the statute.  *See id*. at 480 ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased.").

5

defendant's representations is to prove that he saw and relied on the statements at issue."). The plaintiff has pled Article III standing.

The plaintiff alleges that "[t]he Class Members, prior to making their purchases, saw, in the Product Listing, the name of the Coffee Percolator, *i.e.*, 'Presto Stainless-Steel Electric Coffee Percolator, 12-Cups, Black.'" (ECF No. 1 ¶ 16.)[5] The plaintiff also alleges that he "and at least a significant portion of the other Class Members reasonably believed, prior to and up to the point of their purchase of the Coffee Percolator, that the 'Cups' in '12-Cups' . . . were Standard Cups and that, therefore, the capacity of the Coffee Percolator . . . was 12 Standard Cups." (*Id.* ¶ 18.) The plaintiff also asserts that he and the other class members "purchased the Coffee Percolators" after they saw the allegedly misleading product listing. (*Id.* ¶¶ 15–16.) These allegations are sufficient at this stage. *See Dunn v. Ancient Brands, LLC*, No. 21-CV-390, 2023 WL 6037853, at *3 (N.D.N.Y. Sept. 15, 2023) (amended complaint "allege[d] facts sufficient to establish Article III standing" where the plaintiff alleged that (1) that the plaintiff saw the misleading statement and (2) the plaintiff would not have purchased or paid more for the product if they knew that the statement was misleading).

None of the cases the defendant cites compel a different result. For example, in *Kraus* — a summary judgment case — Kraus admitted that he never saw the tooth whitener advertisements; indeed, the complaint was already drafted when Kraus bought the product. *See Kraus*, 2022 WL 4642170, at *6–7.[6] In *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), Brady claimed that she was misled into buying a "fat-burning" product by

---

[5] The plaintiff alleges that he is one of the "Class Members." (ECF No. 1 ¶ 1.)

[6] The Court can revisit the standing question, if necessary, after discovery. *See Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *10 (S.D.N.Y. Aug. 12, 2016) ("Plaintiff's Article III standing is sufficient at this stage, even if potentially subject to further scrutiny at a later stage."); *see also Poyer*, 2023 WL 3827623, at *7 (finding that the plaintiff's deposition testimony contradicted her complaint because she conceded that she did not see or rely on any of the misrepresentations at issue).

something a spokesperson said.  The court found that Brady could not "plausibly allege an injury traceable to" the spokesperson for the product, because she bought the product before the spokesperson made the representations.  *Id.* at 229.  And the plaintiffs in *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *9 (S.D.N.Y. Mar. 21, 2022), "concede[d] that they failed to allege that they actually saw or were aware of the statements in question on the Products' labels before buying them."  In this case, the plaintiff says that he saw the "12 Cup" language before he bought the Coffee Percolator.  That is enough to show standing.

The defendant also argues that the plaintiff "cannot plausibly allege he was misled" by the "12-Cup" statements, because he and his spouse "had previously purchased similar consumer products, including another coffee pot" that use the words "12-cup" in the product title, and then filed class action lawsuits like this one.  (ECF No. 20 at 12–13.)  Citing the *Kraus* court's observation that Kraus appeared to have "purchased the product in order to generate this lawsuit," 2022 WL 4642170, at *7, the defendant maintains that the plaintiff, like Kraus, bought the product as "fodder for another multi-state class action lawsuit."  (ECF No. 20 at 13.)  As explained above, the *Kraus* complaint "appear[ed] to have been drafted before Plaintiff purchased the product and seemingly without any attempt to conform the allegations in the Complaint to Plaintiff's actual experience."  *Kraus,* 2022 WL 4642170, at *7.  No such conclusion can be drawn in this case, at least not at this early stage of the proceedings.

## II.     Rule 12(b)(6)

The defendant argues that the plaintiff fails to state a claim under New York law and therefore his out-of-state putative class claims also fail.  (ECF No. 20 at 13–19.)  In addition, the defendant challenges the sufficiency of the Alabama law claim, as well as some of the other state claims.  (*Id.* at 19–23.)

7

### a. Plaintiff's Claims Under New York Law

Sections 349 and 350 of the New York General Business Law prohibit "[d]eceptive acts or practices" and "false advertising" "in the conduct of any business." N.Y. Gen. Bus. Law §§ 349(a), 350. To state a claim under either section, a plaintiff must allege three elements: "(1) 'the challenged act or practice was consumer-oriented'; (2) the act or practice 'was misleading in a material way'; and (3) 'the plaintiff suffered injury as result of the deceptive act.'" *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (quoting *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 29 (2000)). The defendant argues that the plaintiff has not sufficiently pled elements two and three. (ECF No. 20 at 13.)

#### i. Materially Misleading Conduct

"New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Sheiner v. Supervalu Inc.*, No. 22-CV-10262, 2024 WL 2803030, at *3 (S.D.N.Y. May 28, 2024) (quoting *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022)). To survive a motion to dismiss, "a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers;" the plaintiff must allege that "a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Dwyer*, 598 F. Supp. 3d at 149). In "determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial," and a court "must consider the challenged advertisement as a whole." *Duchnik v. Tops Markets, LLC*, No. 22-CV-399, 2023 WL 4827951, at *2 (W.D.N.Y. July 6, 2023), *report and recommendation adopted,* No. 22-CV-399, 2023 WL 4828141 (W.D.N.Y. July 26, 2023) (citations omitted).

8

Whether an advertisement is misleading to a reasonable consumer is generally a question of fact, but "a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer." *Sheiner*, 2024 WL 2803030, at *3 (quoting *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-9824, 2023 WL 8005319, at *3 (S.D.N.Y. Nov. 17, 2023)). Nevertheless, dismissal at the motion to dismiss stage "is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (citation omitted); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (for a court to grant a motion to dismiss, the label's context must meet the "heavy burden of extinguish[ing] the possibility that a reasonable consumer could be misled" (citation omitted)); *Henry v. Nissin Foods (U.S.A.) Co. Inc.*, No. 22-CV-363, 2023 WL 2562214, at *4 (E.D.N.Y. Mar. 17, 2023) ("dismissal of an N.Y. G.B.L. §§ 349 or 350 claim" on the basis of a reasonable consumer not being misled "is an exception to the norm" (cleaned up)).

The defendant maintains that the plaintiff has not met this standard. According to the defendant, the plaintiff's claim is based on a "common understanding of the word 'cup' but that "any reasonable consumer understands the meaning of the word 'cup' depends on context." (ECF No. 20 at 14.) Thus, the defendant says, "[t]he standard definition of 'cup' refers to the shape and utility of a drinking vessel," while "[i]n the context of baking and cooking, where a cup in context refers to a unit of measurement, 'cup' has a different meaning when referring to liquids or solids." (*Id.*) Moreover, the defendant argues, "product materials accessible through the Amazon product listing" included a disclaimer specifying that "[o]ne cup is approximately 5

9

ounces brewed coffee." (*Id.* at 15.)  The plaintiff, on the other hand, relies on the Merriam-Webster definition: a cup is a quantity of eight fluid ounces.  (ECF No. 24 at 16–17.)  As for the defendant's disclaimer argument, the plaintiff asserts that the adequacy of the disclaimer — which he challenges in the complaint as insufficiently conspicuous and specific — is a factual question not properly resolved on a motion to dismiss.  (*Id.* at 23–27.)

Under these circumstances, the Court "cannot hold as a matter of law that the product [listing was] not misleading to a reasonable consumer." *Goldemberg*, 8 F. Supp. 3d at 480.  Although "cup" might have multiple definitions, it is not unreasonable for someone buying a coffee maker to assume that cup means eight ounces, just as the complaint says.  "[A]t the motion-to-dismiss stage, where a representation is capable of [more than one] reasonable interpretation[], the Court is not free to reject the misleading one . . . simply because there is an alternative, non-misleading interpretation." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) (citation omitted).

There are also factual questions about the location and wording of the disclaimer.  A consumer can find the capacity disclaimer only by clicking through hyperlinks in the product listing and scrolling through the pages.  (ECF No. 1 ¶ 25.)  And while the user manual may contain information about the coffee maker, the product listing instructs the consumer to consult the manual "before first use" (*id.* ¶ 27), not before purchase.  These circumstances are obviously different than those in *Henry v. Nissin Foods (U.S.A.) Co. Inc.*, 2023 WL 2562214, at *6, where the court found that the "disclaimer's formatting [did] not render it ineffective" because of the "proximity of the disclaimer to the . . . label on the front of the packaging, the asterisk in the label linking to the disclaimer, and the common color typeface used in the two."  Ultimately, "the sufficiency of [a] disclaimer depends upon its effect on consumers, which raises factual

10

questions that are not well suited for resolution on a motion to dismiss." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 62 (2d Cir. 2022); *see also Consumers Union of U.S., Inc. v. New Regina Corp.*, 664 F. Supp. 753, 772 (S.D.N.Y. 1987) ("The adequacy of a disclaimer . . . presents an issue of fact.").[7]  This is therefore not one of the "rare situation[s] where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Hesse*, 463 F. Supp. 3d at 467 (cleaned up).[8]

      ii. *Injury*

The defendant also argues that the plaintiff does not sufficiently allege injury because he does not "allege any other detail that could support the notion that he would have paid a lower amount for the Coffee Percolator," and because he could have returned the Coffee Percolator for a full refund through Amazon.  (ECF No. 20 at 18–19.)  The plaintiff argues that he has satisfied the injury pleading requirement because he pled a price premium, and that it was Amazon, not Presto, that gave the consumer the remedy of returning the Coffee Percolator.  (ECF No. 24 at 14–15.)

"Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010).  At the motion

---

[7] The defendant says that *Int'l Code Council, Inc. v. UpCodes Inc.* is distinguishable because its holding is limited to the "sufficiency of the substance of the disclaimer," and the dispute here is over the "conspicuousness" of the disclaimer.  (ECF No. 25 at 15.)  However, both inquires "depend[] upon [the disclaimer's] effect on consumers, which raises factual questions that are not well suited for resolution on a motion to dismiss." *Int'l Code Council*, 43 F.4th at 62.

[8] Similar to his argument about Article III standing, the defendant also argues that the plaintiff "cannot plausibly assert he was deceived by [the] '12 Cup' language" because he has filed "nearly identical lawsuits" with "the same counsel," and knows "that manufacturers of coffee makers use 'cup' to refer to something other than a 'Standard Cup' of eight-fluid-ounces."  (ECF No. 20 at 17–18.)  Those lawsuits are against different manufacturers and products, and the fact that the plaintiff saw Presto's allegedly misleading product listing before purchasing the Coffee Percolator is sufficient to plead that the misleading act caused the plaintiff's injury.  *See Goldemberg*, 8 F. Supp. 3d at 480.

11

to dismiss stage, a plaintiff need not allege "how much of a premium [he] paid for the product" or "what comparable products . . . might cost" to "plausibly allege injury under N.Y. Gen. Bus. Law §§ 349 and 350." *Orrico v. Nordic Nats., Inc.*, No. 22-CV-3195, 2023 WL 6308015, at *7 (E.D.N.Y. Sept. 28, 2023). The plaintiff alleges that "[i]f the Product Listing had conspicuously and accurately represented the Coffee Percolator Capacity, the price of the Coffee Percolator would have been less than what it actually was, and, therefore, the Class Members would have paid that lower amount." (ECF No. 1 ¶ 29.) These allegations are sufficient to allege injury under a price premium theory. The defendant cites *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018), for the opposite conclusion, but as the *Orrico* court noted, the Second Circuit "spoke to this precise issue more recently" in *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020), and found that a plaintiff's "failure to identify the prices of competing products to establish the premium that she paid is not fatal to her claim at this stage of the proceedings."

The fact that the plaintiff could return the Coffee Percolator does not mean that there was no injury. If a seller could defeat a false advertising lawsuit simply by establishing a return policy, most consumers could not get relief for deceptive acts or false advertising.[9] Because the plaintiff has alleged that the Coffee Percolator product listing was misleading and that he suffered a price premium injury as a result, he has sufficiently stated a claim under New York law.

---

[9] The defendant relies on *Kommer v. Ford Motor Co.*, No. 17-CV-296, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017), where the "adequate remedy" was that "the defect [could] be repaired for free as part of the warranty," and *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 678 (S.D.N.Y. 2012), where the plaintiff could "send in her gift card and claim the unused balance on it." Neither case stands for the proposition that a return policy — standing alone — is enough to defeat a false advertising lawsuit.

12

### b. Out of State Putative Class Claims

#### i. Alabama Statute

Relying on *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017), the defendant argues that the plaintiff's putative class claims under the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-10, are barred by the text of the statute that prohibits class actions. (ECF No. 20 at 19–20.) The plaintiff argues that the Court should ignore *Delgado* on the theory that Judge Garaufis should not have applied Justice Stevens' concurrence in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). (ECF No. 24 at 31–36.) The Court agrees with Judge Garaufis' sound reasoning. The issue in *Shady Grove* was whether Section 901(b) of the New York Civil Practice Law (CPLR), which prohibits class actions that seek to recover a penalty or statutory minimum damages, conflicted with the class action provisions of Federal Rule of Civil Procedure 23. 559 U.S. at 397. The plurality found that it did. Justice Scalia, writing for four justices, held that the "substantive nature" or "substantive purpose" of the New York law "makes no difference," because "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Id.* at 409–410. Writing in dissent for four justices, Justice Ginsberg looked to the nature of the state law rather than focusing on the content of the challenged federal statute, *id.* at 445–451, and opined that CPLR 901(b) was adopted for the non-procedural purpose of limiting remedies. *Id.* at 445. Justice Stevens concurred in the result, but disagreed with the plurality's categorical approach of treating every federal rule that "really regulates procedure" as sufficient to preempt a conflicting state statute. *Id.* at 424–425. Justice Stevens adopted an approach similar to the dissenters' approach, which focused on whether the state law had a substantive purpose recognizing that some

13

procedural state rules "may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy;" Justice Stevens concluded that those rules should not be preempted by a conflicting federal rule. *Id.* at 419–433.

In his thorough and well-reasoned *Delgado* opinion, Judge Garaufis applied Justice Stevens' approach, following the rule that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Delgado,* 2017 WL 5201079, at *8 (quoting *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003)). Judge Garaufis observed further that "the majority of district and circuit courts have found Justice Stevens' concurring opinion [in *Shady Grove*] controlling." *Id.* at *9 (quoting *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 60 (E.D.N.Y. 2017) (cleaned up). After "assess[ing] the whether the state rule being displaced [was] 'intimately bound up in the scope of [the] substantive right or remedy' designed by the state legislature," Judge Garaufis "conclude[d] that the specific inclusion of a class action bar in the Alabama . . . consumer protection laws evinces a desire by the state legislature to limit not only the form of the action but also the remedies available, placing those bars squarely within Justice Stevens' concurrence." *Id.* at *10 (quoting *Shady Grove*, 559 U.S. at 410). The Court agrees with Judge Garaufis and dismisses the plaintiff's class action claims under Alabama's Deceptive Trade Practices Law.[10]

---

[10] The plaintiff cites two post-*Delgado* cases — *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) and *Estle v. Int'l Bus. Machines Corp.*, 23 F.4th 210 (2d Cir. 2022) — in which the Second Circuit followed the plurality opinion in *Shady Grove*. (ECF No. 24 at 31 – 33.) As the defendant notes, the Second Circuit did not analyze which opinion in *Shady Grove* controlled, and neither decision addressed the Alabama statute. *See La Liberte*, 966 F.3d at 85 (analyzing "whether California's anti-SLAPP statute can be applied in federal court"); *Estle*, 23 F.4th at 212 (analyzing whether a "collective-action waiver in the separation agreement is invalid under the ADEA").

14

### ii. *Statutory Standing*

Finally, the defendant argues that the plaintiff does not have statutory standing to bring class action claims under Massachusetts, New Hampshire, Rhode Island, and Utah law. (ECF No. 20 at 20–24.) Citing *Chavez v. Wal-Mart Stores, Inc.*, No. 13-CV-6429, 2014 WL 12591252 (C.D. Cal. June 2, 2014), the defendant argues that the consumer protection statutes in New Hampshire, Rhode Island, and Utah only allow residents of those states to bring claims. (ECF No. 20 at 20–21.) In addition, the defendant says that the Massachusetts and New Hampshire statutes also require that the deceptive conduct occur within the state, and that the mere fact that a product is sold in the state, by itself, cannot violate the statutes. (*Id.* at 21–22.) The plaintiff responds that the cases on which the defendant relies are different, because, unlike the plaintiff in this case, the named plaintiffs in those cases could not assert their own individual claims. (ECF No. 24 at 36–39.) In addition, the plaintiff maintains that a named plaintiff does not personally have to assert an out-of-state claim in order to assert that claim on behalf of unnamed class members; here, the plaintiff asserts that the Massachusetts Class Members purchased the Coffee Percolator while in Massachusetts and the misleading representation was presented to the New Hampshire class members while they were in New Hampshire. (*Id.* at 39–40.)

The defendant is correct that the plaintiff "conflates statutory standing and the Rule 23 requirements for class certification." (ECF No. 25 at 22 (quoting *Chavez,* 2014 WL 12591252 *13).) Dismissal of a case based on statutory standing "— a concept distinct from Article III and prudential standing (and perhaps best understood as not even standing at all) — 'is effectively the same as a dismissal for failure to state a claim.'" *Gibson v. Bartlett Dairy, Inc.*, No. 20-CV-2848, 2022 WL 784746, at *9 (E.D.N.Y. Mar. 15, 2022) (quoting *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 51–53 (4th Cir. 2011)); *see also Zanotti v. Invention*

15

*Submission Corp.*, No. 18-CV-5893, 2020 WL 2857304, at *9 n.5 (S.D.N.Y. June 2, 2020) ("[D]ismissal for lack of statutory standing is typically considered a dismissal for failure to state [a] claim under Federal Rule of Civil Procedure 12(b)(6)."). The plaintiff's reliance on *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 92 (2d Cir. 2018) is therefore misplaced. *Langan* does not "preclude[] a defendant from moving to dismiss a [] plaintiff's claims under a particular statute pursuant to Rule 12(b)(6), on the grounds that the plaintiff fails to state a claim for its own account — a question entirely different from whether it has constitutional standing." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc.*, No. 15-CIV-6549, 2018 WL 7197233, at *21 (S.D.N.Y. Dec. 26, 2018).[11]

Although the plaintiff was not injured in states other than New York, he alleges that there are members of the class who bought the Coffee Percolator in every state for which the plaintiff brings claims. This is sufficient at the motion to dismiss stage to meet the requirements under the Massachusetts and New Hampshire statutes that the conduct occur in the state. *See Actavis*, 2018 WL 7197233, at *44 ("On its own, the 'affecting people of this commonwealth' language [in Mass. Laws ch. 93A, § 1] does not persuade the Court that this claim should be dismissed, particularly as the [plaintiff] has alleged sales of [the products] affecting consumers and third party payors across the country, including in Massachusetts."); *id.* at *47 ("[B]ased on the language of the statute, this Court agrees with those cases that have held that sales of the

---

[11] In *Actavis,* the court noted that "a number of courts, purporting to follow *Langan*, have concluded that, because a class plaintiff who fails to state a claim under a particular state's law (*i.e.*, it cannot recover for the alleged violation of law for its own account) nonetheless has Article III standing, the issue of whether the plaintiff fails to state a claim should abide a decision on a motion for class certification." 2018 WL 7197233, at *21. The court did "not read *Langan* any more broadly than it purports to reach." In *Gibson v. Bartlett Dairy, Inc.*, No. 20-CV-2848, 2022 WL 784746, at *10 (E.D.N.Y. Mar. 15, 2022, the court "heed[ed] and repeat[ed]" the *Actavis* court's "caution" in analyzing Connecticut's consumer protection statute's "in-state class representative requirement," which it found to be a "pleading requirement" best addressed on at the motion to dismiss stage. )

16

offending goods into New Hampshire alleges sufficient intrastate conduct to satisfy the [New Hampshire consumer protection statute].").

Nor has the defendant shown that the Court should dismiss the plaintiff's class claims under Rhode Island and Utah law. The defendant cites *Chavez* for the proposition that only Rhode Island residents can bring claims under that statute, but the statute does not say that. The statute confers a private right of action to those injured by deceptive practices "directly or indirectly affecting the people of" Rhode Island. R.I. Gen. Laws § 6-13.1-1(5); *see also id.* §§ 1-2, 5.2. In any event, the plaintiff has alleged that class members purchased the Coffee Percolator in Rhode Island (ECF No. 1 ¶ 68), which "directly or indirectly affect[s] the people of" Rhode Island.

Nor does *Miramontes v. Ralph Lauren Corp.*, No. 22-CV-4192, 2023 WL 3293424 (S.D.N.Y. May 5, 2023), support the defendant's position that only Utah residents can bring claims under its statute. In that case, the court identified deficiencies in the complaint, including that Miramontes' "only asserted consumer protection claim ha[d] been dismissed with prejudice," and that she "made [no] effort to identify the specific state statutes she alleges [the defendant] has violated" but "merely 'reserve[d] their rights to assert their consumer protection claims' under the states they represent." *Id.* at *7. In this case, on the other hand, the complaint makes allegations about the class members, the specific consumer protection statutes they seek to assert, and the deceptive conduct that occurred in each state. These allegations are sufficient at this stage.

17

## CONCLUSION

For these reasons, the motion is granted as to the class claims brought under the Alabama Deceptive Trade Practices Act and denied as to the remaining claims.

**SO ORDERED.**

                                                          s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
         August 14, 2025